UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL MAURICE CARTER, | No. 2:12-cv-00507-AC-P |
| Petitioner, | |
| v. | ORDER |
| MIKE MCDONALD, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se and in forma pauperis on his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. The parties have consented to the jurisdiction of the undersigned. ECF No. 7, 14. Petitioner contends that his due process rights were violated by the trial court's failure to sua sponte issue an instruction on accident as an affirmative defense, and that his trial counsel provided ineffective assistance. ECF No 1. Respondent has answered, ECF No. 13, and petitioner has filed a traverse, ECF No. 21.

For the reasons that follow, the petition will be denied on the merits without an evidentiary hearing.

I.  Factual and Procedural Background

Petitioner was charged with one count of carrying a dirk or dagger concealed on his

////

////

person in violation of Cal. Penal Code section 12020(a)(4). C.T. 31.[1] It was alleged that he had suffered one prior conviction for a serious felony and had served one prior prison term. C.T. 31-32.

The incident occurred on March 11, 2010 at approximately 10:20 pm.[2] R.T. 39-41.[3] Officer Sean Bellamy of the Davis Police Department was on patrol in a marked police car when he saw petitioner standing near the back gate of a closed business. R.T. 40. Petitioner looked over his shoulder at Bellamy and started walking away from him. R.T. 41. Bellamy pulled closer to the sidewalk, pointed a spotlight at petitioner, and stepped out of his vehicle. R.T. 41. Bellamy asked petitioner, "[H]ey, man, what's up?" R.T. 41. Petitioner said, "[N]othing." R.T. 41. Petitioner told Bellamy he was from Sacramento and did not live in the area, explaining that he got on the wrong bus trying to go to a friend's house and ended up in Davis. R.T. 41, 58-59.

Officer Bellamy asked petitioner if he "had anything on him he shouldn't have." R.T. 42. Petitioner said he had a knife in his pocket. R.T. 42. Bellamy conducted a lawful search[4] of petitioner, starting with the right exterior pocket of his jacket. R.T. 42. The pocket was open and did not have a zipper or snap that would make the pocket difficult to reach into. R.T. 43.

Inside the pocket, Bellamy felt an unopened can of beer and the handle of a knife. R.T. 43. The beer can was in a vertical position and in front of the knife handle. R.T. 43. The tip of the knife "was facing forward and the sharpened edge was pointing down towards the ground." R.T. 45.

Bellamy first removed the 24-ounce can of beer from petitioner's pocket. R.T. 55. He

---

[1] "C.T." refers to the Clerk's Transcripts lodged by the respondent in the instant case.
[2] Petitioner urges this court to reject respondent's version of the facts as adopted by the California Court of Appeal and to instead find that the facts established at trial are those described in petitioner's opening brief on direct appeal. ECF No. 21 at 3. To the extent petitioner intends to raise this as a claim for relief, such a claim is not cognizable on federal habeas review. However, this court has independently reviewed the record and found the following facts to be supported by the evidence presented at trial.
[3] "R.T." refers to the reporter's transcripts filed by respondent.
[4] Petitioner was on probation at the time of the incident. R.T. 33-34. This fact was not presented to the jury.

then removed the knife.[5]  R.T. 55.  The knife was a folding knife with a three and one-half inch blade.  R.T. 43.  The blade was open and locked into position.  R.T. 43.

Petitioner told Bellamy that he had the knife in his pocket, but did not know it was open.  R.T. 47.  Bellamy "asked how that happens," and petitioner explained that he had just picked up the jacket from his mother's house and did not know what was in the pockets.  R.T. 47.  Bellamy asked, "[S]o you didn't know if the knife was in your pocket?"  R.T. 47.  Petitioner said he did not know.  R.T. 47.  Bellamy pointed out that petitioner previously told Bellamy he had a knife in his pocket.  R.T. 47.  Petitioner stated he knew the knife was there, but did not know that it was locked open.  R.T. 47.  Petitioner added that "the bolts in the knife must be loose and that it opened by itself while inside his pocket."  R.T. 47.  Bellamy examined the knife and tried to flick it open by making a snapping motion with his wrist, but was unable to do so.  R.T. 47-48.

At trial, Officer Bellamy demonstrated how he attempted to flick the blade open when he initially took the knife from petitioner.  R.T. 47.  Bellamy was able to flick the knife open on the fourth or fifth try.  R.T. 47-48.  On cross, Bellamy admitted that the fact the knife could be flicked open "could be an indication that [the bolts] were loose."  R.T. 49-50.  If the bolts were tight, he would not be able to open the knife with one hand.  R.T. 50.  However, Bellamy testified that none of the bolts on the knife appeared to be loose and the knife "[did] not wiggle within the hand."  R.T. 49, 69-70.  When asked if he noticed "anything about the condition of the knife that would suggest that the handle or that the blade would be loose and would open up into a locked position absent somebody purposefully doing that," Bellamy answered, "no."  R.T. 49.

On July 21, 2010, the jury found petitioner guilty of carrying a concealed dirk or dagger on his person.  R.T. 139.  In a bifurcated proceeding, the trial court found petitioner's prison prior and prior conviction allegations to be true.  R.T. 147-48.  On October 4, 2010, petitioner was sentenced to an aggregate term of five years in prison.  R.T. 164.

---

[5] At trial, Officer Bellamy initially testified that he was certain that the knife was the first object he removed from petitioner's pocket. R.T. 43, 53-54. However, after defense counsel presented Bellamy with a transcript of his testimony from the preliminary hearing, Bellamy stated that he removed the beer can first and then removed the knife. R.T. 54-55.

Petitioner timely appealed, and the California Court of Appeal for the Third Appellate District affirmed the conviction in an unpublished opinion dated July 6, 2011. Lodged Doc. 1. Petitioner's timely appeal for review was denied by the California Supreme Court on September 14, 2011. Lodged Doc. 2. Petitioner did not seek collateral review in the state courts. The instant federal habeas petition was filed on February 27, 2012. ECF No. 1. It includes the two issues raised and exhausted on direct appeal, as well as additional ineffective assistance of counsel claims not presented to the state court. ECF No. 1 at 4, 8-9, 10-11. Respondent answered the first two claims on the merits, and asserted the defense of exhaustion as to the remaining claims. See ECF No. 13 at 7, 11-13.

II.     Standards Governing Habeas Relief Under the AEDPA

28 U.S.C. § 2254, as amended by the AEDPA, provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 131 S. Ct. 770, 785 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. at 784-785 (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538

U.S. 63, 71-72 (2003). Clearly established federal law also includes "the legal principles and standards flowing from precedent." Bradley v. Duncan, 315 F.3d 1091, 1101 (9th Cir. 2002) (quoting Taylor v. Withrow, 288 F.3d 846, 852 (6th Cir. 2002)). Only Supreme Court precedent may constitute "clearly established Federal law," but circuit law has persuasive value regarding what law is "clearly established" and what constitutes "unreasonable application" of that law. Duchaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000); Robinson v. Ignacio, 360 F.3d 1044, 1057 (9th Cir. 2004).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 1399. Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. Richter, 131 S. Ct. at 786.

III.     Claim One: The Trial Court's Failure to Instruct Sua Sponte on the Accident Defense

   A.     Factual Background

In Claim One, petitioner alleges that the trial court's failure to instruct sua sponte on the

defense of accident deprived him of due process and violated his Sixth Amendment right to a jury trial by removing the issue of accident from the jury's consideration. ECF No. 1 at 10-11. Specifically, he argues that an instruction on accident would have allowed the jury to find that the fourth element of the offense was not satisfied because he lacked the requisite mental state.[6] ECF No. 1 at 10-11; <u>see also</u> Lodged Doc. 3 (Appellant's Opening Brief, Third Appellate District) at 8-10.

The jury was instructed that in order to find petitioner guilty, they had to find that he committed "the prohibited act . . . with a specific mental state." C.T. 100. The jury was then instructed as follows:

> The defendant is charged with unlawfully carrying a concealed dirk or dagger in violation of Penal Code section 12020(a).
>
> To prove that the defendant is guilty of this crime, the People must prove that:
>
> 1. The defendant carried on his person a dirk or dagger;
>
> 2. The defendant knew that [he was] carrying it;
>
> 3. It was substantially concealed on the defendant's person;
>
> AND
>
> 4. The defendant knew that it could readily be used as a stabbing weapon.
>
> The People do not have to prove that the defendant used or intended to use the alleged dirk or dagger as a weapon.
>
> A dirk or dagger is a knife or other instrument with or without a handguard that is capable of ready use as a stabbing weapon that may inflict great bodily injury or death. Great bodily injury means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm.
>
> An otherwise legal pocketknife/folding knife is not a dirk or dagger unless the blade of the knife is exposed and locked into position.

---

[6] Petitioner argues that an instruction on accident pursuant to Cal. Penal Code section 26 should have been given as follows: "All persons are capable of committing crimes except those . . . who committed the act . . . through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence.'" ECF No. 1 at 10; Lodged Doc. 3 (Appellant's Opening Brief, Third Appellate District) at 8.

> A knife carried in a sheath and worn openly suspended from the waist of the wearer is not concealed.
>
> When deciding whether the defendant knew the object could be used as a stabbing weapon, consider all the surrounding circumstances, including the time and place of possession. Consider also the destination of defendant, the alteration of the object from the standard form, and other facts, if any.

C.T. 109; R.T. 92-93.

### B.  Last Reasoned State Court Opinion

The state court held that petitioner was not entitled to an instruction on accident. Lodged Doc No. 1 at 7. This determination of state law by the state appellate court is binding on this court. See, e.g., Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); Hicks v. Feiock, 485 U.S. 624, 629-30 (1988) (state appellate court's determination of state law is binding and must be given deference). Accordingly, the constitutional issue before this court is solely whether the lack of an accident instruction deprived petitioner of his right to a fair trial.

This court must presume that the state court adjudicated the claim on the merits. Johnson v. Williams, 133 S. Ct. 1088, 1096 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted."). Because the state court did not discuss the constitutional issue, this court conducts an independent review of the record. See Delgado v. Lewis, 223 F.3d. 976, 981-82 (9th Cir. 2000) (where the state court does not supply reasoning for its decision, the federal court will independently review the record for adjudication of that issue). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

The undersigned finds that the lack of an accident instruction in this case did not rise to the level of a due process violation. Erroneous jury instructions do not support federal habeas

7

relief unless the infirm instruction so infected the entire trial that the resulting conviction violates due process. Estelle v. McGuire, 502 U.S. 62, 72 (1991) (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973)). See also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional right]' "). Where, as here, a habeas petitioner's claim of error involves the *failure* to give a particular instruction, the petitioner's burden is "especially heavy." Henderson v. Kibbe, 431 U.S. 145, 155 (1977). This is because "[a]n omission, or incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Id.

"The significance of the omission of such an instruction may be evaluated by comparison with the instructions that were given." Henderson, 431 U.S. at 156. Here, the fourth element of petitioner's offense required the jury to determine whether he knew the knife "could readily be used as a stabbing weapon." The gist of petitioner's argument is that accident is a defense to Penal Code § 12020(a) liability "where the knife opens accidentally, *and the defendant is unaware that it is consequently ready for use as a stabbing weapon*." Lodged Doc. No. 3 at 10 (emphasis added). In other words, the dispositive question is not whether the knife initially opened by accident, but whether petitioner was subsequently unaware that the knife was open. If petitioner was aware the knife was open, the mental state element could be satisfied regardless of whether the knife opened by accident. Because the standard instructions regarding the elements of Penal Code § 12020(a) fully informed the jury of the relevant mental state requirement, due process did not require the accident instruction.

Accordingly, the state court's rejection of petitioner's due process claim was not objectively unreasonable. Moreover, the jury's verdict reflects a necessary finding (in light of the instructions given) that petitioner knew the knife was open. Accordingly, the absence of an accident instruction was inconsequential. For all these reasons, it was not objectively unreasonable for the state court to conclude that the trial court's failure to instruct on accident did not "so infect[] the entire trial that the resulting conviction violated due process." See also Henderson, 431 U.S. at 157 ("Even if we were to make the unlikely assumption that the jury

might have reached a different verdict pursuant to an additional instruction, that possibility is too speculative to justify the conclusion that constitutional error was committed."). Relief must therefore be denied on this claim.

> IV. Claim Two: Ineffective Assistance of Counsel for Failure to Request Accident Instruction

In Claim Two, petitioner alleges that his trial counsel provided ineffective assistance by failing to request an instruction on accident as an affirmative defense.[7]  ECF No. 1 at 4, 8.

> A. Factual Background

At trial, the prosecution acknowledged during closing arguments that if the jury believed petitioner did not know the blade of the knife was locked open while inside his pocket, they should find him not guilty.  R.T. 99.  Although defense counsel had questioned Officer Bellamy about whether the bolts on the knife were loose and whether the knife could have opened by itself, R.T. 49-50, counsel never explicitly argued during closing that the knife opened by itself.  Instead, he primarily attacked Bellamy's credibility[8] and suggested that the knife was not actually open when Bellamy found it in petitioner's pocket.  R.T. 106.  He also attempted to bolster petitioner's credibility by explaining the alleged inconsistencies in the statements petitioner made to Bellamy about the knife.[9]  R.T. 109-110.

On July 21, 2010, the jury informed the court that it had deadlocked on the fourth element

---

[7] The court here considers only the allegations and evidence that were before the California Supreme Court in Case No. S195592, Lodged Doc. No. 2.  See Pinholster, 131 S.Ct. at 1398.  Because petitioner filed his state petition in pro per, the court construes that petition liberally and has carefully reviewed its exhibits for facts that support his claim.

[8] Defense counsel emphasized that Bellamy made a mistake when he initially testified that the knife was the first object he removed from petitioner's pocket, R.T. 110, that the beer can was not mentioned in Bellamy's police report, R.T. 106-107 , and that there were no witnesses or camera recordings to corroborate Bellamy's version of the facts, R.T. 107-108.  He also suggested that, as a young white officer conducting a search of a black man, Bellamy was motivated by a desire avoid "a dark spot on his service record if it's known that he searches people and finds nothing." R.T. 109.

[9] Counsel argued that petitioner did not know the contents of his pockets when he picked up the jacket from his mother's house, but later became aware that the knife was in his pocket.  R.T. 109-110.

9

1  of the offense. R.T. 125-126; C.T. 130. After conferring with counsel, the court decided to re-
2  instruct the jury. R.T. 127. The court re-read the instructions described above, R.T. 130-131,
3  and, over defense counsel's objection, R.T. 128-129, gave the following additional instructions
4  with respect to the fourth element:

> It is a question of fact for the jury to decide as to whether a knife [sic] readily available or not. Examples of when a pocket knife is not readily available are: when it cannot be used without intervening manipulation or if it is carried in a configuration requiring assembly before it can be utilized as a weapon.

8  C.T. 110; R.T. 131.

9  The court also allowed counsel an additional ten minutes of closing argument regarding
10 the fourth element of the offense. R.T. 127, 129. The district attorney argued that petitioner must
11 have known the knife was open inside his pocket because when petitioner put the "cold beer" in
12 his pocket, he would have felt that the blade of the knife was exposed.[10] R.T. 133. Defense
13 counsel argued primarily that the knife could not be used as a stabbing weapon without
14 "intervening manipulation" because the beer can was in the way, R.T. 133-134, and added that
15 with respect to "the knowledge element . . . [i]t's up to you as jurors to determine whether or not
16 at that point in time, [petitioner] knew that the blade was open." R.T. 134-135.

17 The jury resumed deliberations and requested a copy of the new instructions, as well as a
18 read back of Officer Bellamy's testimony regarding "whether there was an impediment to the
19 knife." R.T. 139; C.T. 131-132. Approximately one hour after the requested testimony was read
20 back, the jury returned a guilty verdict. C.T. 127; R.T. 139.

21          B.  The Clearly Established Federal Law

22 To establish a constitutional violation based on ineffective assistance of counsel, a
23 petitioner must show (1) that counsel's representation fell below an objective standard of
24 reasonableness, and (2) that counsel's deficient performance prejudiced the defense. Strickland v.
25 Washington, 466 U.S. 668, 692, 694 (1984). Prejudice means that the error actually had an

---

[10] The district attorney also argued that the knife could be used as a stabbing weapon without any "intervening manipulation." R.T. 132.

adverse effect on the defense. There must be a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 693–94. The court need not address both prongs of the Strickland test if the petitioner's showing is insufficient as to one prong. Id. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

The United States Supreme Court has emphasized that "[t]he standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Richter, 131 S. Ct. at 788 (internal quotations and citations omitted). The determination to be made on federal habeas review, therefore, is not whether counsel acted reasonably, but "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

### C. The State Court's Ruling

The state court held that "the failure of defendant's trial counsel to request an instruction on the accident defense did not fall below the standard of a reasonably competent attorney and/or was not prejudicial." Lodged Doc. No. 1 at 7.

### D. Objective Reasonableness Under § 2254(d)

The state court did not unreasonably apply the prejudice prong of the Strickland standard. In order to establish prejudice, petitioner was required to show that there was a reasonable probability that, but for counsel's failure to request an accident instruction, the result of the proceeding would have been different. As discussed above, an accident instruction would have been relevant to, but not dispositive of, the mental state element of the offense. If the jury had been instructed on accident, a finding that the knife opened by accident would not have ended the mental state inquiry. An accident instruction could only have affected the verdict if the jury believed both (1) that the knife opened by accident, and (2) that, as a result of the accidental opening, petitioner was unaware that the knife was locked in the open position and could readily be used as a stabbing weapon. Based on the other evidence before the jury, discussed below, the state court could reasonably conclude that the jury had rejected both of these propositions and that counsel's failure to request an accident instruction was not prejudicial.

First, the state court could reasonably conclude that the jury did not believe that the knife opened by accident. Officer Bellamy, the sole witness at trial, testified that the knife was locked open when he found it in petitioner's pocket, that he was unable to flick the knife open with one hand when he took the knife from petitioner, and that nothing about the knife suggested it would open by itself without "somebody purposefully doing that." R.T. 43, 47-49. Petitioner presented no evidence to the contrary. On these facts, the state court could reasonably conclude that the jury credited Officer Bellamy's testimony and did not believe that the knife opened by accident, making the lack of an instruction on accident harmless.

Second, regardless of whether the knife opened accidentally, the state court could reasonably conclude that the jury believed that petitioner knew the knife was open. Bellamy testified that petitioner made several contradictory statements regarding his knowledge about the knife. R.T. 42, 47. Petitioner first told Bellamy that he had a knife, then that he did not know the knife was in his pocket, and then that he did know it was there but did not know it was open. R.T. 42, 47. The state court could reasonably conclude that the jury simply did not find petitioner credible and that an instruction on accident would not make the jury more likely to believe petitioner's claim of ignorance.

Furthermore, after the jurors deadlocked on the fourth element of the offense and were re-instructed on that issue, R.T. 126-129, they asked for a read back of Bellamy's testimony regarding "whether there was impediment to retrieving the knife." C.T. 132. One hour later, they returned a guilty verdict. C.T. 127; R.T. 139. It would not be objectively unreasonable for the state court to conclude that the jury was struggling solely with the issue of whether the knife was readily accessible, and that the jury accepted that petitioner knew the knife was open. Viewed in this context, the state court could reasonably conclude that an instruction on accident would not have made a different result more likely.

In light of Strickland's deferential standard and the other evidence available to the jury, it was not objectively unreasonable for the state court to deny petitioner's ineffective assistance of counsel claim. Accordingly, relief must be denied on this claim.

V.      Additional Ineffective Assistance of Counsel Allegations

For the first time on federal habeas, petitioner alleges a number of additional instances of ineffective assistance of counsel. ECF No. 1 at 4, 8, 9. These subclaims are unexhausted because they were not presented to the California Supreme Court. See Lodged Doc. 4 (Petition for Review, Third Appellate District, August 12, 2011). A petitioner satisfies the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider all claims before presenting them to the federal court. O'Sullivan v. Boerckel, 526 U.S. 838, 839 (1999). This petitioner did not do.

Despite the lack of exhaustion, this court will address these subclaims on the merits. See 28 U.S.C. § 2254(b)(2). District courts retain the discretion to determine a petition on its merits, bypassing an asserted procedural defense, where the underlying claims are "clearly not meritorious." See Lambrix v. Singletary, 520 U.S. 518, 525 (1997); see also Day v. McDonough, 547 U.S. 198, 208–09 (2006) (district courts can exercise discretion in each case to decide whether the administration of justice is better served by dismissing the case on statute of limitations grounds or by reaching the merits of the petition); Granberry v. Greer, 481 U.S. 129, 135 (1987) (discussing ability of district court to bypass exhaustion determination where the petitioner does not raise a colorable federal claim). For the reasons discussed below, the court denies relief on all claims.

Petitioner alleges that his trial counsel "went against [his] wishes on many instances," failed to suppress evidence at the preliminary hearing, and failed to provide him with an evidentiary hearing. ECF No. 1 at 4, 9. Petitioner further alleges that counsel misadvised him regarding the probable minimum for parole eligibility,[11] ECF No. 21 at 7, and failed to research all defenses of fact and law, ECF No. 1 at 9. Petitioner fails to identify how any of these alleged errors prejudiced him at trial. These putative subclaims are entirely conclusory and therefore cannot support habeas relief. See James v. Borg, 24 F.3d 20, 27 (9th Cir.1994) (emphasizing that

---

[11] This claim was raised for the first time in the traverse. ECF No. 21 at 7. However, the court considers the issue out of an abundance of caution in light of the liberal construction of pro se proceedings. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

13

1  "[c]onclusory allegations which are not supported by a statement of specific facts do not warrant
2  habeas relief."). Accordingly, relief is denied on these claims.

3  Petitioner next alleges that his trial counsel rendered ineffective assistance because he
4  failed to introduce petitioner's medical records at trial.[12] ECF No. 1 at 4; ECF No. 21 at 6.
5  Although the claim is not a model of clarity, petitioner's argument appears to be that trial counsel
6  should have introduced petitioner's medical history in order to establish that on the day of the
7  incident, petitioner had just been released from the hospital and was under the influence of
8  medication when he spoke with Officer Bellamy. See id. The first problem with this claim is that
9  petitioner cannot establish that counsel's performance was deficient. See Strickland, 466 U.S. at
10  687 (establishing that to demonstrate ineffective assistance of trial counsel, petitioner must show
11  that his counsel's performance was deficient and that the deficient performance prejudiced his
12  defense). Petitioner's medical records contain information that would likely have prejudiced
13  petitioner more than helped him.[13] See ECF No. 12 at 3, 7-8. Thus, there is a tactical basis
14  apparent from the records themselves that explain counsel's failure to introduce this evidence at
15  trial. See Strickland, 466 U.S. at 687-88 ("defendant must show that counsel's representation fell
16  below an objective standard of reasonableness"). Moreover, although the medical records do
17  relate to petitioner's general mental state, they do not contain information that would cast
18  reasonable doubt on his ability to recognize that the knife in his pocket was open. Accordingly,
19  the undersigned finds that this ineffective assistance of counsel claim is meritless on both prongs
20  of the Strickland analysis.[14]

21  Finally, petitioner alleges that trial counsel rendered ineffective assistance by failing to

---

[12] Petitioner filed an addendum to his federal habeas petition and attached his medical records as "Exhibit A." ECF No. 12.

[13] Petitioner's medical records indicate that he suffers from auditory hallucinations and hears voices that tell him to hurt other people. ECF No. 12 at 3, 7-8. The "Psychosocial History" section of the report indicates that on one occasion petitioner heard voices telling him to hurt his mother's boyfriend and that petitioner subsequently stabbed him. ECF No. 12 at 8.

[14] For the first time in his traverse, petitioner alleges without elaboration that appellate counsel was also ineffective for failing to introduce his medical records. ECF No. 21 at 6. As this is essentially the same claim alleged against trial counsel, see ECF No. 21 at 6, it fails for the same reasons described above.

investigate and prepare for trial. ECF No. 1 at 4; ECF No. 21 at 5. Specifically, petitioner alleges that counsel failed to consult or retain a weapons expert for the purpose of establishing that the bolts on the knife were loose or, alternatively, to determine whether a folding knife such as petitioner's would be able to "come open with a flick of the wrist." ECF No. 1 at 8-9. The fundamental problem with this claim is that petitioner is unable to establish prejudice resulting from trial counsel's failure to retain a weapons expert. See Strickland, 466 U.S. at 687. Even if counsel had consulted such an expert, petitioner provides no evidence that the expert would have determined that the bolts in the knife were loose. Even assuming that the expert would agree that the bolts were loose, this testimony would be offset by Officer Bellamy's testimony that he was unable to flick the knife open on the day of the incident and petitioner's contradictory statements regarding whether he knew the knife was inside his pocket. See R.T. 47-48.

Petitioner's argument requires the court to assume, without any additional supporting evidence, that (1) an expert would find that the bolts in the knife were loose, (2) the jury would believe the loose bolts actually caused the knife to open accidentally, and (3) the jury would believe that, as a result, petitioner did not know the knife was open, despite other evidence to the contrary. In short, petitioner's claim that the testimony of a weapons expert would have made a different result more likely is entirely speculative. See Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997) ("Speculation about what [a witness] could have said is not enough to establish prejudice."); Hendricks v. Calderon, 70 F.3d 1032, 1042 (1995) ("Absent an account of what beneficial evidence investigation into any of these issues would have turned up, [petitioner] cannot meet the prejudice prong of the Strickland test."). Accordingly, relief must be denied on this claim.

VI.     Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or a deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, 28 U.S.C. foll. § 2254. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court must either

issue a certificate of appealability indicating which issues satisfy the required showing or must state the reasons why such a certificate should not issue.  Fed. R.App. P. 22(b).  For the reasons set forth herein, petitioner has not made a substantial showing of the denial of a constitutional right.  Therefore, no certificate of appealability should issue.

Accordingly, IT IS HEREBY ORDERED that:

1. The petition for a writ of habeas corpus is denied; and
2. This court declines to issue a certificate of appealability.

DATED: October 14, 2014

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE